**In re Sukhbir Singh BEDI, Petitioner.**

**An Application for Admission to the Bar of the District of Columbia Court of Appeals.**

**No. 02–BG–977.**

District of Columbia Court of Appeals.

Argued Dec. 10, 2003.

Decided Feb. 22, 2007.

Jacob A. Stein, with whom George A. Fisher, Washington, DC, was on the brief, for petitioner.

Alan H. Kent, Washington, DC, for the Committee on Admissions.

Before WAGNER,* FERREN and STEADMAN,** Senior Judges.

WAGNER, Senior Judge:

Petitioner, Sukhbir Singh Bedi, applied for admission to the District of Columbia Bar. After a hearing held pursuant to D.C.App. R. 46(f), the Committee on Admissions (Committee) filed a report recommending to this court that his application be denied because Bedi failed to meet his burden of demonstrating by clear and convincing evidence that he possesses good moral character and general fitness to practice law in the District of Columbia. In response to this court's order requiring Bedi to show cause why his application should not be denied, he filed a brief and argued before this court that: (1) the procedures and conduct of the hearing were unfair in that he was required to prove by clear and convincing evidence that he did

---

* Judge Wagner was Chief Judge of this court at the time of argument. Her status changed to Senior Judge on December 21, 2005.

** Judge Steadman was an Associate Judge of this court at the time of argument. His status changed to Senior Judge on August 8, 2004.

not engage in acts of misconduct as alleged by the Committee; (2) the evidence was insufficient to prove that he cheated on the February 1996 bar examination or that he made false statements to the Committee and/or its representatives concerning the incident; and (3) he established by clear and convincing evidence that he did not knowingly or falsely claim on his applications for admission to the bar that he suffered an impairment requiring special testing accommodations. We conclude that the Committee properly applied the burden of proof and that the procedures used in conducting the hearing were appropriate. Further, we conclude that the Committee's findings are supported by substantial evidence and that Bedi did not meet his burden of demonstrating good moral character and fitness to practice law. Accordingly, we deny his application for admission to the bar.

## I.

Sukhbir Bedi passed the written examination for admission to the District of Columbia bar in February 1999 after multiple unsuccessful attempts.[1] The Committee notified Bedi that after considering his application, it was not willing to certify his admission and that he had the choice of withdrawing his application or requesting a formal hearing pursuant to D.C.App. R. 46(f)(1).[2] Bedi requested a formal hearing and inquired about the nature of "the adverse matters upon which the Committee relied in denying admission." In response, the Director of Admissions informed Bedi's counsel that the matters relied upon included allegations that he had cheated during the 1996 bar examination and that he had sought special testing accommoda-

tions for several examinations based on claims of disability that were not credible. Bedi filed a "motion to specify charges and to clarify the quantum of proof requirements." In response, the Committee set forth the following charges: (1) that Bedi cheated or attempted to cheat on the bar examinations administered in 1990, 1992 and 1996; (2) that he knowingly made "false statements to the Committee and/or its representatives in connection with his behavior during the February 1996 bar examination"; and (3) that between December 1991 and 1996, Bedi knowingly and falsely claimed on his applications for bar admission that he suffered from dyslexia for which he required special testing accommodations. With respect to the procedure to be followed and the burden of proof, the Committee informed Bedi that it considered the written record (for which a copy was available to him) to be sufficient to establish a *prima facie* case for each of the charges, and therefore, he would have "the burden of going forward and the burden of persuasion, for the negative." Citing D.C.App. R. 46(e), the Committee also stated that "Bedi bears the ultimate burden of demonstrating, by clear and convincing evidence, that he possess good moral character and general fitness to practice law."

After a formal hearing, the Committee issued written findings of fact and conclusions and recommended to this court that Bedi's application be denied. The Committee determined that Bedi "failed to sustain his burden of proving, by clear and convincing evidence, that he possesses the good moral character and general fitness required to practice law." As reasons for its conclusion, the Committee referred to

1. According to the Committee's findings, between July 1988 and July 1998, Bedi failed the D.C. bar examination twelve times and failed the Virginia bar examination six times.

2. The Committee's letter denying certification was preceded by an informal meeting with members of the Committee concerning matters disclosed in his application.

specific instances of wrongdoing that it had found to be established by substantial evidence. These included that: (1) Bedi had cheated on the February 1996 bar exam; (2) he had made false statements to the Committee and staff about his conduct during the February 1996 bar exam; and (3) he had fraudulently claimed that he had dyslexia in an effort to secure special testing accommodations.[3] In light of the Committee's recommendation, this court issued to Bedi an order to show cause why his application should not be denied. In response to the court's order, Bedi filed a brief, the Committee filed a responsive brief, and Bedi filed a reply. The parties have been heard in oral argument, and we consider the Committee's report and recommendation and the parties' arguments with respect thereto.

## II.

Bedi argues that the "clear and convincing evidence" standard, as applied to the facts of this case, is inherently unfair and denied him due process in the consideration of his application for admission. While conceding the appropriateness of that standard in the typical bar application process, he contends that, as applied here, the Committee unfairly placed upon him the burden of proving by clear and convincing evidence that he did not commit the wrongful acts specified by the Committee.[4] The Committee responds that it did

not require Bedi to refute the allegations of misconduct by clear and convincing evidence. It contends that the "clear and convincing evidence" standard governed only the ultimate determination of whether Bedi possessed the requisite moral character and fitness for admission to the Bar.

### A. Applicable Legal Principles

■■■ Applicants for admission to the District of Columbia bar have the burden of "demonstrating, by clear and convincing evidence, that the applicant possesse[s] good moral character and general fitness to practice law in the District of Columbia." D.C.App. R. 46(e); see also Rule 46(d) (providing that the Committee shall not certify an applicant for admission until he or she demonstrates good moral character and general fitness to practice). This standard of proof "requires evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re Dortch, 860 A.2d 346, 358 (D.C.2004) (citation and internal quotation marks omitted). This heavy burden is imposed for "the protection of prospective clients, and the assurance of the ethical, orderly and efficient administration of justice."[5] Id. at 355 (citation and internal quotation marks omitted). Under a rule placing upon the applicant the burden of demonstrating good moral character, "an applicant must initially furnish enough evidence of good charac-

3. The Committee determined that the evidence was insufficient to prove that Bedi cheated on the examinations given in 1990 and 1992.

4. Bedi does not challenge the authority of the Committee to make the allegations of wrongdoing as a basis for denying his admission to the bar. He contends, however, that the process by which the Committee addressed these allegations, by placing on him the burden of disproving the charges by a standard of clear and convincing evidence, creates a constitu-

tional fairness issue. In light of our disposition, we need not reach Bedi's constitutional claim.

5. Prior to 1989, when the rule was amended, bar applicants were required to prove character and fitness by the preponderance of the evidence. Dortch, supra, 860 A.2d at 357–58. That standard "simply requires the fact finder to believe that the existence of the contested fact is more 'plausible' than its nonexistence." Id. at 358.

ter to make a prima facie case. The examining Committee then has the opportunity to rebut that showing with evidence of bad character." *Konigsberg v. State Bar*, 366 U.S. 36, 41, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961). Once there has been a showing of bad character, the applicant then must produce evidence of good moral character or rebut the Committee's showing of bad character. *Florida Bd. of Bar Examiners Re: R.D.I.*, 581 So.2d 27, 29 (Fla.1991); *see also Dortch*, 860 A.2d at 361. The Committee must then decide whether the applicant has shown clearly and convincingly good moral character. *Konigsberg*, 366 U.S. at 41–42, 81 S.Ct. 997. In reviewing the Committee's findings and recommendation, we will accept its factual findings if supported by substantial evidence. *In re Baker*, 579 A.2d 676, 680 (D.C.1990) (citations omitted). While we accord some deference to the Committee's recommendation, the question of whether the applicant has met the clear and convincing evidence standard of proof for good moral character and fitness is ultimately a question of law for the court to decide. *In re Wells*, 815 A.2d 771, 772, 773 n. 2 (D.C. 2003) (citing *In re Manville*, 494 A.2d 1289, 1293 (D.C.1985)); *see also Baker*, 579 A.2d at 680 (concluding that there is no obligation to defer to the Committee on the interpretation of Rule 46). The ultimate determination of whether an applicant will be admitted to the bar is a question for this court. *Baker*, 579 A.2d at 680. It is against this general legal framework that we consider Bedi's arguments.

### B. *Burden of Proof Challenge*

Bedi contends that the Committee improperly placed upon him the burden of proving, by clear and convincing evidence,

that he did not commit the wrongful acts upon which it relied in concluding that he failed to demonstrate good moral character and fitness. In support of his argument, Bedi relies, in part, on the Committee's written response to his "motion" concerning the procedure for the hearing and the burden of proof. Specifically, he refers to the Committee's counsel's statement that it "believes that the written record . . . is sufficient to establish a *prima facie* case on each of the specifications. Therefore, Sukhbir Singh Bedi shall have both the burden of going forth and the burden of persuasion, for the negative." Bedi argues that this language indicates that the Committee essentially placed upon him the burden of proving, clearly and convincingly, (1) that he did not cheat or attempt to cheat on the bar examination, and (2) that his application for special accommodations was not "fudged." The Committee argues that, contrary to Bedi's contention, its response to his inquiry acknowledged its counsel's obligation to establish a *prima facie* case on the specified charges of misconduct and did not state any particular quantum of proof imposed upon him for rebutting that *prima facie* case. The Committee contends that it used the clear and convincing evidence standard only in its determination of whether the applicant possesses the requisite moral character and fitness for admission as provided in Rule 46(e).[6] However, the Committee suggests that once it establishes a *prima facie* case, it is appropriate for both the burden of going forward, and the burden of persuasion, to shift to the applicant to rebut the *prima facie* case against him.

▆▆▆ Our review of the Committee's response and report persuade us that the

---

**6.** Rule 46(e) provides that "[t]he applicant shall have the burden of demonstrating, by clear and convincing evidence, that the appli-

cant possesse[s] good moral character and general fitness to practice law in the District of Columbia."

Committee did not require Bedi to prove by clear and convincing evidence that he did not engage in the specified misconduct or otherwise allocate improperly the burden of proof. First, the Committee's response itself does not indicate the quantum of proof required for the applicant to defeat the *"prima facie* case" on the Committee's specification of charges against Bedi, as opposed to that required ultimately to show good moral character.[7] The only reference to Bedi having a clear and convincing evidence burden is in subsection (b) of the response which, consistent with Rule 46(e), refers to Bedi's ultimate burden of demonstrating that he possesses good moral character and general fitness to practice law.[8] Second, subsection (a) of the Committee's response is read most reasonably to mean that the Committee had the burden of establishing a *prima facie* case with respect to its allegations of misconduct, which it could satisfy with the information on file, and therefore, Bedi had the burden of producing evidence to rebut this *prima facie* showing of misconduct.[9] This reading is consistent with the general rule that

a party asserting ... an issue has the burden of proof—*i.e.,* burden of persuasion—and its constituent burden of production—*i.e.,* the initial burden of going forward with evidence—as to each mate-

rial element of such issue in order to prevail.... A party satisfies his burden of production with respect to an issue material to his case when he has made out a "prima facie" case as to such issue—*i.e.,* a sufficient quantum of evidence which, if credited, would permit judgment in his favor unless contradicted by credible evidence offered by the opposing party.

*Nader v. de Toledano,* 408 A.2d 31, 48 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980) (internal citations omitted). When the Committee's response is read in light of the traditional meanings accorded the language it used, it is apparent that it recognized its obligation to make out a *prima facie* case by offering evidence that, if credited, would permit a finding that Bedi had engaged in the alleged misconduct. Since it was the Committee that alleged the acts of wrongdoing, it was the Committee that had the initial burden of going forward with evidence sufficient to establish a *prima facie* case as to these particular issues. The Committee informed Bedi that once a *prima facie* case was established with respect to the allegations against him, the burden of production shifted to him to offer contradictory evidence. *See id.* ("The establishment of a prima facie case by the party bearing the

---

7. After providing a list of specific charges, the Committee's response states, in pertinent part, as follows:

In response to your inquiry concerning procedures and the burdens of proof and going forward, we advise as follows:

(a) The Committee believes that the written record, an updated copy of which is available to you, is sufficient to establish a *prima facie* case on each of the specifications. Therefore, Sukhbir Singh Bedi shall have both the burden of going forward and the burden of persuasion, for the negative.

(b) Additionally, Sukhbir Singh Bedi bears the ultimate burden of demonstrat-

ing, by clear and convincing evidence, that he possesses good moral character and general fitness to practice law. D.C.App. R. 46(e). The Committee may inquire about any matters relating thereto, and rely on, any of the documents and information contained in the record, as well as any testimony at the hearing.

8. *See* note 7, *supra.*

9. *See* D.C.App. R. 46(f)(3) (providing, *inter alia,* that "the Committee shall not be bound by the formal rules of evidence" and that evidence may be taken "in other than testimonial form").

burden of persuasion as to an issue shifts the burden of producing contradictory evidence to the adverse party."). As used by the Committee, the "burden of going forward" terminology necessarily refers to Bedi's burden of producing contradictory evidence, *i.e.*, evidence that would refute any credible showing made by the Committee in its *prima facie* case related to its allegations of wrongdoing. *See id.*

Bedi argues that by including in that same sentence that he also had the "burden of persuasion, for the negative" must have been intended to mean that he had the ultimate burden of proving by clear and convincing evidence that he did not engage in the alleged acts of misconduct. As already discussed, we see no basis to conclude that the Committee placed such a heavy evidentiary burden on Bedi. Indeed, in its response to this court, the Committee candidly states that "[h]ad the applicant been able to rebut the substantial evidence of his misconduct—even by 'a mere preponderance of the evidence'—the Committee's conclusions and ultimate determination would have been entirely different." We are not persuaded that the "burden of persuasion" statement in the Committee's response undermines its obvious recognition of its obligation to prove that the misconduct it alleged had occurred. It stated clearly that once the Committee had met its burden of establishing a *prima facie* case with respect to the allegations of wrongdoing, it was incumbent upon the applicant to offer evidence contradicting or discrediting that *prima facie* showing that he engaged in the wrongful acts as alleged.[10]

Consistent with the rule, the Committee stated in the next subparagraph of its response that the ultimate burden was on the applicant to prove good moral character.[11] Once the Committee challenged Bedi's good character with evidence of conduct that would reflect adversely on his character, Bedi had the burden of producing evidence either to discredit the Committee's evidence or to support further his claim of good moral character in the face of the adverse evidence. *See Lubetzky v. State Bar of California,* 54 Cal.3d 308, 285 Cal.Rptr. 268, 815 P.2d 341, 343 (1991) (citations omitted) (describing a bar applicant's burden to make a *prima facie* showing of good character, the State bar's rebuttal, if any, and the applicant's burden to present further evidence in light of any such rebuttal); *see also Green, supra* note 10, 499 A.2d 870 at 873 (citing McCormick on Evidence § 336 (E. Cleary 3d ed. 1984)) (explaining that the "[burden of production] refers to the burden of coming forward with satisfactory evidence of a particular fact in issue").

Bedi argues that the Committee's report shows that, in fact, it based its unfavorable recommendation on his failure to prove by clear and convincing evidence that the alleged wrongful acts did not occur. He contends that if he only had to rebut the evidence offered against him, he succeeded by showing deficiencies in the Committee

---

10. The phrases "burden of proof" and "burden of persuasion" have been interpreted generally to have the same meaning. *Green v. District of Columbia Dep't of Employment Servs.,* 499 A.2d 870, 873 (D.C.1985) (citing *People's Counsel v. Public Serv. Comm'n,* 474 A.2d 835, 837 n. 5 (D.C.1984)) (other citation omitted). However, we have recognized that [t]he term "burden of proof" is ambiguous, encompassing two separate burdens: the burden of production and the burden of persuasion.... The former refers to the burden of coming forward with satisfactory evidence of a particular fact in issue.... The latter constitutes the burden of persuading the trier of fact that the alleged fact is true.

499 A.2d at 873 (internal citations omitted).

11. *See* note 7, *supra.*

staff's presentation on the cheating incident and good faith reliance on a physician's certification that he suffered from dyslexia. He contends that since the acts of wrongdoing alleged by the Committee form the basis for its conclusion that he failed to prove good moral character and fitness by clear and convincing evidence, the Committee must have held him to that same standard in rebutting the specifications of wrongdoing made against him. Further, he contends that there is no way that these two considerations can be compartmentalized.

Contrary to Bedi's argument, the Committee's Report shows that it did not require him to prove by clear and convincing evidence that he did not engage in misconduct, but rather held him to that standard on the ultimate burden of proof of good moral character and fitness as required by Rule 46(e). The Committee challenged in the proceeding Bedi's claim of good moral character based on the information concerning the acts of wrongdoing alleged against him. After a hearing, the Committee first found that substantial credible evidence established that Bedi had cheated on the February 1996 bar examination, that he was not truthful with the Committee and its staff concerning his misconduct, and that he knowingly used a "fudged" diagnosis in an effort to obtain special testing accommodation.[12] The Committee never required Bedi to prove by clear and convincing evidence the negative, as he contends (*i.e.*, that these events did not occur). Once the Committee determined that the allegations of misconduct were established by credible evidence, it then considered whether Bedi had demonstrated by clear and convincing evidence that he possessed the requisite moral character and fitness to practice law. Given that the Committee had found, based on substantial evidence, that the wrongful conduct, in fact had occurred, the Committee concluded that Bedi did not meet his burden of showing that he possessed the requisite moral character and fitness to practice law. Put another way, the Committee concluded essentially that the acts of wrongdoing that were established against Bedi by substantial, credible evidence reflected so adversely upon his character and fitness to practice that he could not meet his burden of proving clearly and convincingly his present good moral character.

The Committee's approach has been sanctioned in similar bar admissions proceedings. For example, in *Dortch, supra*, this court considered whether an applicant with serious prior felony convictions had met his ultimate burden of demonstrating good moral character and general fitness to practice law under Rule 46(d) & (e). 860 A.2d at 361. This court stated that "[g]iven the 'extremely damning' character of his crimes, it was incumbent on Dortch to make an exceptionally compelling showing of his full and complete rehabilitation in order to assure [the court] of his present good moral character." *Id.* While Dortch produced some evidence of his rehabilitation efforts, this court held that, viewed in its entirety, the evidence did not show clearly and convincingly proof of Dortch's good moral character. *Id.* Thus, we described in *Dortch* essentially a shifting of the burden of production between the applicant and the Committee, with the ultimate burden for demonstrating good moral character remaining upon the applicant. *See Konigsberg, supra*, 366 U.S. at 41–42, 81 S.Ct. 997 (recognizing that under rules requiring the applicant to demon-

---

**12.** The Committee found that the evidence clearly and convincingly established the 1996 cheating incident, while substantial evidence established his lack of candor with the Committee and its staff and the "fudged" claim of disability.

strate good moral character, he or she must make a *prima facie* showing of good moral character, and "[t]he examining Committee then has the opportunity to rebut that showing with evidence of bad character."); *Lubetzky, supra,* 285 Cal. Rptr. 268, 815 P.2d at 343 (explaining that under rule placing burden of showing good moral character on bar applicant, if applicant makes a *prima facie* case, and the State Bar rebuts that evidence, "applicant must introduce further evidence of good moral character or discredit the State Bar's evidence"); *R.D.I., supra,* 581 So.2d at 29 (describing applicant's burden to show good moral character, any objector's obligation to rebut that *prima facie* showing, and explaining that "[w]hile the burden of proof never shifts, the burden of proceeding does").

▮ Bedi argues that although such a procedure is fair in cases where the misconduct involved is based on past events as to which a record has already been established, it is unfair when based upon charges of misconduct as to which there is no established past record. We discern no reason that the Committee on Admissions cannot determine in a character and fitness hearing whether allegations of misconduct bearing upon these issues are true based on evidence presented at the hearing. Our rule provides for an evidentiary hearing at which the applicant has a "right to be represented by counsel . . ., to examine and cross-examine witnesses, to adduce evidence bearing on moral character and general fitness to practice law . . .," and for the Committee to make factual determinations. Rule 46(f)(2)(iv) and (3). Thus, the rule contemplates a procedure whereby disputed issues of fact are examined and resolved by the Committee just as in other civil cases. The Committee's fact finding role is well established, and we accord some deference to its findings, accepting them if they are supported by substantial evidence. *Baker, supra,* 579 A.2d at 680. Other jurisdictions rely upon similar committees to make factual determinations as to any allegations of specific acts of misconduct in bar admission proceedings based on the evidence presented. *See, e.g., R.D.I., supra,* 581 So.2d at 29 (concluding that the Florida Board of Bar Examiners could find from the evidence, including the circumstances surrounding a Bar applicant's business activities, that he "was involved in 'prior, substantial criminal activity' "); *In re Legg,* 325 N.C. 658, 386 S.E.2d 174, 180 (1989) (holding that the evidence supported the North Carolina Board of Law Examiners' finding that the Bar applicant, without authorization, assumed the right of ownership to funds of another), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2589, 110 L.Ed.2d 270 (1990). Bedi has provided no reasons that the specific acts of misconduct involved in this case could not be addressed by the Committee on Admissions at the hearing, and we discern none.

In summary, pursuant to Rule 46(e), the applicant has the ultimate burden of demonstrating good moral character and fitness to practice law by clear and convincing evidence. In a bar admissions proceeding, the initial burden of showing good character and fitness is with the applicant. The Committee on Admissions may rely upon specific acts of misconduct to rebut the applicant's *prima facie* showing of good character. When the Committee relies upon specific acts of misconduct to defeat the applicant's *prima facie* showing of good character, and the applicant denies the charges, the applicant may offer evidence to refute or discredit the Committee's charges. If the evidence of misconduct is sufficient to rebut the applicant's *prima facie* showing of good character, then the applicant may introduce further evidence of good moral character

for consideration. *See Dortch, supra,* 860 A.2d at 361 (explaining the need for an applicant having prior criminal convictions to make a compelling showing of rehabilitation to prove present good moral character). The Committee must then decide, based upon all the evidence, whether the applicant has carried the ultimate burden of proving by clear and convincing evidence that he or she possesses good moral character and fitness to practice law. Rule 46(e); *see also R.D.I., supra,* 581 So.2d at 29; *Lubetzky, supra,* 285 Cal. Rptr. 268, 815 P.2d at 342–43. In this case, the Committee conducted the proceedings and submitted a report consistent with the procedure outlined here, and it did not improperly allocate the burden of proof.

## III.

■ Bedi argues that there was no credible evidence that he cheated or attempted to cheat on the February 1996 bar examination. He contends that he rebutted the allegations of cheating by providing his own version of events and by discrediting the version offered by the witnesses presented by the Committee. Essentially, Bedi argues that the Committee should have made credibility determinations in his favor. When reviewing credibility determinations made by the Committee, we make "due allowance for the Committee's opportunity to observe and evaluate the demeanor of the applicant where relevant." *Wells, supra,* 815 A.2d at 772. Just as in other evidentiary hearings, the hearing authority who hears and observes the witnesses is in a better position to make determinations as to their credibility. Therefore, while it is ultimate-

ly for this court to decide whether an applicant should be admitted to the bar, "we give some measure of deference to the Committee's factual findings, and we will accept those findings, unless unsupported by substantial evidence." *Baker, supra,* 579 A.2d at 680 (citing *Manville, supra,* 494 A.2d at 1293) (other citation omitted); *In re Kleppin,* 768 A.2d 1010, 1011 (D.C. 2001) (citation omitted) (accord). We consider Bedi's challenge to the Committee's factual findings applying these principles.

■ The record shows that there was sufficient evidence, direct and circumstantial, from which the Committee could find that Bedi had cheated on the 1996 bar examination by reading from notes in the men's room before destroying them and flushing them in the toilet. Patrick Fagan and Christopher Dix testified regarding the February 1996 incident.[13] There was evidence that Bedi left the examination room to use the restroom and signed a list to that effect. Fagan stated that after a few minutes, Dix sent him into the restroom to see what was keeping Bedi. Fagan said that after he entered the restroom, he heard clipping sounds, similar to a stapler being used. He said that he could see through the crack between the stall door and its frame that Bedi was shifting papers about the size of an index card back and forth. He testified that the paper he saw was not toilet paper. He reported that the "clicking" noise continued intermittently for a short period of time. Fagan reported his observations to Dix. Dix testified that he entered the restroom and heard clipping noises. Dix testified that he saw through the mirror and directly, that Bedi was shuffling papers back and forth with dark lettering on them.[14] Dix

---

**13.** Fagan and Dix both prepared written reports of the incident close to the time of its occurrence. Fagan testified and adopted his written report as a part of his direct testimony.

**14.** Dix did not mention in his written report that he made the observations without the aid of the mirror.

said that Bedi had something black in his right hand. Dix described the crack between the door and the frame as "a good sized gap" through which he could see. According to Dix, the stapling noises continued the entire few minutes that he was looking.

After making these observations, Fagan heard Bedi come out of the stall after the toilet flushed. Fagan asked Bedi for his notes, but Bedi claimed he had none. According to Fagan, Bedi claimed that he was taking medication for dyslexia. Fagan asked for the medicine bottle or a prescription, neither of which Bedi could produce. Another proctor asked Bedi to empty his back pockets, untuck his shirt, roll down his socks, and lift his pants legs. Dix testified that in his back pocket, Bedi had "a pair of little black scissors about five or six inches long." Bedi told Dix that he had a "bad nail" and that he needed the scissors to trim it. However, Dix testified that he saw Bedi holding the scissors in his right hand, the same hand on which he claimed to have the bad nail. No papers were found on Bedi's person, and no notes could be found after a thorough search. Bedi was allowed to finish the exam, but

was ultimately unsuccessful. Bedi was informed that this incident could be used against him in future bar proceedings.

 The foregoing evidence and the reasonable inferences that can be drawn therefrom provide substantial evidence in support of the Committee's findings that Bedi used written notes during the administration of the bar examination that he disposed of in the bathroom. On this record, it is difficult to formulate any other plausible explanation for the conduct described. In making its credibility determinations, the Committee had an opportunity to observe the demeanor of the witnesses and to consider any inconsistencies or discrepancies in the testimony of any witness or between the testimony of different witnesses. It also provided sound reasons for rejecting Bedi's version of events.[15] We find no basis upon which to reject the Committee's credibility determinations and factual finding that Bedi cheated on the February 1996 bar examination.[16]

## IV.

Bedi argues that he established by clear and convincing evidence that he did not

15. The Committee rejected Bedi's innocent explanations for his behavior with respect to the 1996 cheating incident. Specifically, the Committee noted that although Bedi claimed that he was taking medication for dyslexia while in the restroom that day, he did not have any containers for it on him, and none were found in the restroom. Further, the Committee found that Bedi's other explanation, that he was cutting open a Pepcid packet with a Swiss Army knife, was implausible because the packet can be opened without a knife, and would not require, in any event, several minutes of cutting. The Committee also observed that the scissors that Bedi claimed to have to cut a bad nail were not manicure-type, but like those used by kindergarten kids, and that the evidence showed that Bedi was using his right hand to cut papers, while he claimed that the bad nail was on his right index finger. While Bedi

claimed that Fagan and Dix could not possibly see inside the stall, the Committee found as a result of its site view, to which Bedi consented, that it was possible for the proctors to see into the stall using the mirrors.

16. Bedi argues that even though the charges of cheating on the February 1990 and February 1992 bar examinations were dismissed by the Committee, it used that evidence to support its finding that he cheated on the February 1996 examination. That does not appear to be the case. He contends that these charges were based on unfounded suspicions. Even assuming that this was error, it was harmless. Here, the evidence that Bedi cheated in 1996 was so overwhelming that the charge could be established without the use of any adverse inferences drawn from his prior conduct.

knowingly and falsely claim on his applications that he suffered from dyslexia that required special testing accommodations. While he concedes that his request might not have been well taken from a medical perspective, he contends that he based his request upon a diagnosis made independently by his treating physician. Further, he contends that his medical record shows that there was a symptomatic basis for that diagnosis, and he trusted and relied upon the physician's diagnosis. He argues that the Committee failed to consider the reasonableness of the diagnosis under the circumstances and his testimony that he went to a doctor to take the recommended testing. The Committee contends that Bedi knew or should have known that the written diagnosis of dyslexia from his physician, a relative, was "fudged" because the doctor stated initially only that dyslexia was possible, and he made a firm diagnosis of dyslexia only five days later without explanation. The Committee also found pertinent to its consideration that Bedi's claim of disability changed several times.

■ Substantial evidence supports the Committee's finding that Bedi knowingly claimed falsely to have dyslexia in an attempt to obtain special testing accommodations. First, the evidence showed that Bedi did not claim a disability in his bar applications between 1988 to 1992, and he disavowed any disability from 1996 to 1999. Second, Bedi secured a letter stating that his condition was "attributed" to dyslexia from his father-in-law, Dr. Pabla, who five days earlier had noted in his treatment record only that Bedi had "possible dyslexia." Bedi was not tested further at that time, and he consistently refused to be tested for dyslexia. Bedi argues that the Committee should have credited the testimony of Dr. Pabla. However, Dr. Pabla's testimony showed that: (1) he was an internist, not a psychologist or psychiatrist; (2) he did not perform a differential diagnosis; (3) he was not trained to diagnose learning disabilities; and (4) his diagnosis was not supported by testing. All of these factors, along with the familial relationship and the fact that it was later determined that Bedi did not have dyslexia, provide a sufficient basis for the Committee's rejection of Dr. Pabla's testimony. The evidence was sufficient for the Committee to conclude that Bedi used what he knew to be a "fudged" diagnosis in an attempt to obtain special testing accommodations. Such conduct would constitute an ethical violation under our rules [17] and reflect adversely upon the bar applicant's character and fitness for admission to the bar.

Bedi also argues that there was no credible evidence that he made a false statement to the Committee and/or its representatives in connection with his behavior during the February 1996 cheating incident or at the admissions hearing. In support of this argument, he again cites discrepancies in testimony of the witnesses against him. The Committee had the opportunity to consider any inconsistencies and discrepancies in the testimony of the witnesses and credited the testimony of Mr. Dix and Mr. Fagan concerning these events. Again, we accord some deference to the Committee's credibility determinations where, as here, it has had the opportunity to observe and evaluate the demeanor of the witnesses. *See Wells, supra,* 815 A.2d at 772 (citing *Manville, supra,* 494

---

17. Rule of Professional Conduct 8.1 provides, in pertinent part, that

> An applicant for admission to the Bar ... shall not:
> (a) Knowingly make a false statement of material fact: or

> (b) Fail to disclose a fact necessary to correct a misapprehension known by the ... applicant to have arisen in the matter....

A.2d at 1293). We find no basis to overturn the Committee's credibility determinations.[18]

## V.

### Conclusion

█ The Committee's findings that Bedi cheated on the February 1996 bar examination and knowingly provided false or misleading information to the Committee in an effort to obtain special testing accommodations are supported by substantial evidence in the record. We agree with the Florida Supreme Court that "[c]heating on the bar exam is a particularly egregious act of dishonesty which cannot be easily excused." *G.J.G., supra* note 18, 709 So.2d at 1381; *see also Corrigan, supra* note 18, 546 N.E.2d at 1321 (concluding that cheating on the bar examination shows dishonesty indicative of bad character). Knowingly providing false statements of material fact on a bar application violates our Rule of Professional Conduct 8.1. In light of this misconduct and the absence of other evidence supporting his claim of present good character, we agree with the Committee that Bedi did not meet his burden of demonstrating by clear and convincing evidence his good moral character and fitness to practice law. Therefore, his application for admission to the bar hereby is denied.

*So ordered.*

18. This court has not determined previously whether an applicant can be rejected on the separate ground that his version of events were not credited at the character and fitness hearing. We need not resolve that issue here because the applicant has not raised it. We note that there are authorities on both sides of the issue. *See, e.g., In re Corrigan,* 47 Ohio St.3d 32, 546 N.E.2d 1315 (1989) (denying an application for admission to the bar, in part, because of the applicant's "lack of candor" at the hearing, and noting that when confronted about the charge, she "first lied," and then equivocated about her involvement); *Florida Bd. of Bar Examiners re G.J.G.,* 709 So.2d 1377 (Fla.1998) (holding that an applicant to the bar can not be denied admission simply for denying the charges and requiring that the charges against him to be proven).